## UNITED STATES FIDELITY & GUARANTY CO. v. ANDERSON

(No. 1399; March 6, 1928; 264 Pac. 1030)

*Gillette & Clark, J. M. Roushar* and *L. J. Williams,* for appellant.

91

*Reid & More*, and *J. L. Sawyer*, for respondents.

BURGESS, District Judge.

The United States Fidelity and Guaranty Company brought an action in the District Court of Goshen County against the Treasurer of that county to compel the delivery to it of certain town and school district warrants held by the treasurer. The Receiver of the Torrington National Bank, an insolvent national banking corporation, thereupon intervened and filed an answer asserting a right in himself to the possession of said warrants. The judgment below was in favor of the receiver and the Guaranty Company has appealed.

The facts are undisputed. In substance they are that on April 26, 1921, the Torrington National Bank, as principal, and the Guaranty Company, as surety, executed and delivered, pursuant to Chapter 183 of the Wyoming 1920 Compiled Statutes relating to the deposit of public moneys, their bond to said county in the sum of $5000, conditioned, in effect, that the bank would pay over to the Treasurer of the County, upon demand, public moneys deposited with it by him; that in April, 1923, the bank executed and delivered to Goshen County the following collateral deposit agreement:

"COLLATERAL DEPOSIT AGREEMENT
KNOW ALL MEN BY THESE PRESENTS:

That the Torrington National Bank of Torrington, Wyoming, in order to secure Goshen County, Wyoming, against loss on account of deposit of the County funds in said Bank temporarily and in excess of the amount for which said bank is bonded to said county as provided by Chapter 183, Wyoming Compiled Statutes 1920, does hereby assign to Goshen County, Wyoming the collateral deposited herewith, a schedule of which is annexed hereto, marked "Exhibit A" and identified by the signature of the Cashier of said Bank and of the County Treasurer of Goshen County, Wyoming. The condition of this deposit is:

That said bank shall and will safely keep and pay over to the County Treasurer of Goshen County, Wyoming, or her authorized deputy, on her check, order or demand, all money which may come into the possession of said bank under and by virtue of the provisions of Chapter 183, Wyoming Compiled Statutes 1920, together with all interest accruing thereon as in said Chapter provided, and in case of default on the part of said bank under the foregoing conditions, Goshen County, Wyoming, shall have full power and authority to sell as hereinafter provided said securities or so much thereof as may be necessary to realize the full amount of the funds of said County so deposited in said bank, together with the interest thereon.

If the sale be made of said collateral or any part thereof as hereinabove provided, the same may be had at public or private sale whenever there shall be a failure or refusal of said bank to pay the said funds or any part thereof, upon the demand or order of said County Treasurer or her au-

thorized deputy on said bank. Notice of said sale shall be given by publication in a newspaper published at Torrington, Wyoming, once each week for five consecutive weeks, and the Chairman of the Board of County Commissioners and the County Clerk of Goshen County, Wyoming, shall transfer any collateral thus sold to the purchaser, and thereupon the absolute ownership thereof shall vest in the purchaser or purchasers upon payment of the purchase money to the County Treasurer. . Should there be any surplus after paying the amount due, the County and the expenses of sale, it shall be paid to said bank.

IN WITNESS WHEREOF, etc.''

The collateral referred to in said agreement consisted of town and school district warrants amounting to $3312.96 to obtain the possession of which the Guaranty Company brought this suit.

The bank closed its doors in January, 1924, at which time the county treasurer had on deposit with it the sum of $4630.33. This the Guaranty Company, as surety on the bond given by the bank, was compelled to pay and did pay, and thereupon demanded of the Treasurer the warrants above mentioned.

The basis of the claim of the Guaranty Company is that under both the collateral deposit agreement set forth above, and under the statutes of this state, the warrants secured the same deposits as were secured by the bond, and having paid to the County the debt of its principal, namely, the Bank, the Guaranty Company is subrogated to the rights of the county to the warrants.

The vital question in the case is, did the bond and the collateral deposit agreement secure the same deposits? and calls for a construction of Section 2954 of the Wyoming 1920 Compiled Statutes relating to the pledging of collateral as security for public deposits.

This section originally appeared as Section 6, Chapter 30, of the 1907 Session Laws. In 1909 it was amended and re-enacted so as to read as follows:

Section 1. "That Section 6 of Chapter 30 of the Session Laws of Wyoming of 1907 be amended and re-enacted so as to read as follows:

Section 6. "Any such depository may, instead of such bond in an approved surety company, furnish, as security for such deposit, or deposits, United States Government bonds, or state bonds of this State, county, city or school district bonds or warrants issued by virtue of the laws of this State, worth not less than their par value, and in an amount equal, at least, to the maximum amount of money at any time to be deposited with such bank, provided, however, that for temporary deposits in excess of the amount for which such bank may bond as provided by this chapter, such depository or bank may deposit local securities having an appraised value of at least twenty-five per cent more than the amount of such temporary deposits; the said securities to be approved by said Board of Deposits, and to be accompanied by a written assignment vesting the legal title thereto in the State of Wyoming, as collateral security, that such depository, so depositing and assigning said securities, shall and will safely keep and pay over to the State Treasurer, or his authorized deputy, on his check, order or demand, all money which may come into the possession of such depository, under and by virtue of the provisions of this act, together with all interest accruing thereon as herein provided, and, providing, that in case of default on the part of such depository, the said State shall have full power and authority to sell, in the manner hereinafter provided, said securities or so much thereof as may be necessary to realize the full amount of the funds of the State so deposited in said depoistory, together with the interest thereon. The interest on such bonds, so deposited and furnished, shall, when paid, be turned over to the bank so depositing the same, as long as it is not in default." Chap. 94, 1909 S. L.

The above section is applicable to the treasurer of any county, municipality, or school district, as well as to the state treasurer. Sec. 2968, Wyo. Comp. Stat. 1920.

The change made, it will be noted, was by the addition of the clause "Provided, however, that for temporary deposits in excess of the amount for which such bank may bond as provided by this chapter, such depository may deposit local

securities having an appraised value of at least twenty-five per cent more than the amount of such temporary deposits."

The section as thus amended contains within itself a contradiction. The amending clause provides local securities may be furnished to secure temporary deposits made in excess of the deposits already secured by bond, and when considered alone clearly contemplates that only temporary deposits in excess of any bond given were to be secured by such securities, and not all the deposits or a general balance of account. The section, however, then proceeds with the requirement that all securities furnished as collateral shall be accompanied by a written assignment conditioned that the depository shall safely keep and pay over on demand all moneys which may come into the possession of such depository by virtue of the provisions of the depository law, and that in case of default such securities may be sold so far as necessary to realize the full amount of the funds so deposited. The amending clause provides that the local securities shall secure only the temporary excess deposits, while the remainder of the section provides they shall secure all deposits. The contradiction arises from the insertion in the middle of a section of an amending clause without regard to the provisions which remained.

The reason for this amendment is clear. The amount of public moneys to be deposited and secured do not remain constant, but vary from time to time during the year, always reaching the peak when taxes become due and payable. It was found to be both unnecessary and expensive for the depository of public funds to keep at all times with the proper public treasurer a surety bond guaranteeing the maximum amount which during the year the treasurer might deposit. So it was provided that temporary deposits in excess of the amount for which a bond had been given could be secured by the depositing of local securities.

The clear intent of the amending clause should prevail over any contradictory provisions within the section because it is a later declaration of the will of the legislature and this

intent, we believe, is that local securities furnished to secure temporary excess deposits are to secure them and not all deposits. Certainly the legislature was not intending that a part of the deposits was to be doubly secured—by bond and by collateral too. That would be the result if the construction contended for by the Guaranty Company were sustained, that local securities furnished to secure temporary excess deposits, secured all other deposits as well.

We are convinced, therefore, that this section wherein it requires the written assignment accompanying the local securities to contain the provision that the depository shall safely keep *all* money which may come into his or its possession under and by virtue of the provisions of the depository law, and in case of default to sell the same so far as may be necessary to realize the full amount of the funds so deposited, should, in the light of the amending clause, be construed to mean, in the case of temporary excess deposits, *all moneys* which may be deposited temporarily and in excess of the amount for which a bond has already been given.

Upon turning to the collateral deposit agreement executed by the parties in the case we find it follows the language of the statute. It recites ''That the Torrington National Bank of Torrington, Wyoming, in order to secure Goshen County, Wyoming, against loss on account of deposit of the County funds in said bank, temporarily and in excess of the amount for which said bank is bonded to said county as provided by Chapter 183, Wyoming Compiled Statutes 1920, does hereby assign to Goshen County, Wyoming, the collateral deposited herewith.'' As this agreement follows the statute and was intended to create no greater rights or liabilities among the parties than the statute contemplates, it should receive the same construction as the statute.

The warrants did not, therefore, secure the same deposits or indebtedness which the bond of the Guaranty Company secured, and it follows that the right of subrogation did not exist.

It is further contended by the Guaranty Company that under its bond it was security for the repayment of the whole deposit although the obligation was limited to $5000, and for that reason should be subrogated. We perceive no merit in this contention. The penalty of its bond was limited to $5000. It was not required to pay, and could not have been required to pay, a larger sum, and its bond did not secure the same indebtedness as the warrants.

The judgment below must be affirmed and it is so ordered.

*Affirmed.*

BLUME, Ch. J., and KIMBALL, J., concur.