## STATE v. YELLOWSTONE PARK COMPANY

(No. 2214; January 20, 1942; 121 Pac. (2d) 170)

For the appellant there was a brief by *Ewing T. Kerr,* Attorney General; *H. I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Kerr.*

504

For the respondent, there was a brief by *Bard Ferrall* of Cheyenne, Wyoming, and *T. B. Weir* of Helena, Montana, and oral arguments by *Mr. Ferrall* and *Mr. Weir*.

BLUME, Justice.

The question involved in this case is as to whether or not an act of Congress permitting the State to levy a gasoline tax on sales of gasoline in Yellowstone Park includes permission to levy a tax on the use thereof by the importer. The Yellowstone Park Company, defendant herein, is the owner of a fleet of motor trucks and busses which are used to haul freight and passengers within the confines of the Yellowstone National Park. The company imported certain gasoline and sold it. It paid a tax upon the goods so sold, and to that extent no controversy between the parties exists. But between June 10, 1935 and December 31, 1939, it also imported into the Park 545,533 gallons of gasoline which was used by it in the operation of its motor vehicles. The State claims that it should pay thereon a tax of four cents a gallon, which is the amount levied and collected

by the state on gasoline sold and used in this state pursuant to Section 115-1101, Rev. St. 1931 and subsequent sections, as amended, the tax on the number of gallons mentioned totalling $21,817.32. The company denies that it is subject to this tax. This case was brought to recover the amount claimed by the State. After issue joined, and submission of the case under an agreed statement of facts, the lower court entered judgment for the company, from which the State has appealed.

Section 2 of the Act of Admission of Wyoming as a state provides that "exclusive legislation, in all cases whatsoever, shall be exercised by the United States" in the Yellowstone National Park, and that the Federal Government "shall have exclusive control and jurisdiction over the same." And it is agreed herein that the laws of the State levying a tax upon gasoline would not extend to the area embraced within the Park, except only in so far as Congress has given special permission. See Standard Oil Co. v. State, 291 U. S. 242, 54 Sup. Ct. 381, 78 L. Ed. 775 and cases cited. Permission to tax the use of gasoline during the times above mentioned is claimed to be contained in the so-called Hayden-Cartwright Act of June 16, 1936 (Title 4, USCA Sec. 12), which in so far as applicable here reads as follows:

(a) All taxes levied by any State, Territory or the District of Columbia upon sales of gasoline and other motor vehicle fuels may be levied, in the same manner and to the same extent, upon such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States. Such taxes, so levied, shall be paid to the proper taxing authorities of the State, Territory or the District of Columbia, within whose borders the reservation affected may be located.

(b) The officer in charge of such reservation shall, on or before the fifteenth day of each month, submit a

written statement to the proper taxing authorities of the State, Territory or District of Columbia within whose borders the reservation is located, showing the amount of such motor fuel not sold for the exclusive use of the United States during the preceding month."

The statute was construed by the United States District Court of Minnesota in the case of State of Minnesota v. Ristine, 36 Fed. Supp. 3, wherein the court stated that "it is my opinion that the United States consented to the imposition and collection of 'sales' taxes on motor fuels, and to such taxes only. It did not consent to the imposition of 'use' or 'privilege' taxes." It also called attention to, and thought of significance, the fact that the Hayden Cartwright Act was amended by an Act adopted October 9, 1940 (54 St. at Large, 1059, Sec. 7; Supplement 4 USCA 1941 page 109), the first part of the Act in so far as quoted herein now reading as follows:

"All taxes levied by any State, Territory or the District of Columbia upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States. Such taxes, so levied, shall be paid to the proper taxing authorities of the State, Territory or the district of Columbia, within whose borders the reservation affected may be located."

Attention in the Minnesota case, supra, was doubtless called to this change in the law on account of the general rule stated in 59 C. J. 1097, that "it will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. So a change of phraseology from

that of the original act will raise the presumption that a change of meaning was also intended."

The Attorney General would abbreviate the Congressional Act here in question as follows: "All taxes levied by any state * * * upon gasoline * * * may be levied in the same manner and to the same extent upon such fuels * * * when such fuels are not for the exclusive use of the United States * * *." But that takes too great a liberty with the Act. A fairer abbreviation may be found in State of Minnesota v. Ristine, supra, to this effect: "All taxes levied by any State * * * upon sales of gasoline and other motor vehicle fuels may be levied in the same manner and to the same extent upon such fuels when sold by or through post exchanges * * * located on United States military or other reservations, when such fuels are not for the exclusive use of the United States." That taxes upon "sales" were contemplated is not alone shown by the fact that the act states directly that the taxes may be levied upon "sales," but also by the phrase "when sold" etc. It would seem that for us to construe the Act as not containing these terms would be pure legislation on our part, not permissible even under the most liberal construction of the power of courts. The Attorney General seeks to justify such interpretation by the argument that exemptions from general taxes are not favored. The difficulty with that argument in this case is that the general gasoline taxes levied by Wyoming can apply only within the territory over which the State has jurisdiction, and it is only by favor of Congress that the ordinary jurisdiction of the State has been extended, and this is, of course, limited by the terms of such extension. Except for that Act, the State might as well attempt to collect gasoline taxes in Colorado or Montana, and it is readily seen in what light the argument of the Attorney General would in such case appear.

It would seem to us that the term "sales" or "when

sold" are terms too plain to be construed away by a court. Thus we find in Volume 38 of Words & Phrases, page 60, a quotation from In Re Frank's Estate, 277 N. Y. S. 573, where it is stated that "a 'sale' in legal nomenclature, is a term of precise legal import, both at law and in equity, and has well-defined legal signification, and has been said to mean at all times a contract between parties to give and to pass rights of property." On page 99 of the same work we find a statement of the essential elements of a sale. There must be, it is stated, a consideration or price, a seller, a purchaser and a delivery of the thing sold. The Supreme Court of the United States in Indian Motorcycle Co. v. United States, 283 U. S. 570, 75 L. Ed. 1277, 51 S. Ct. 601, in construing the Federal tax on sales of motorcycles, held that the tax was "laid on the sale, and on that alone. It is levied at the time of the sale and is measured according to the price obtained by the sale." There was a dissent in that case, but not on this point. The Supreme Court of North Dakota in Standard Oil Co. v. State Tax Comm's., (N. D.) 299 N. W. 447, 449, in referring to the sales tax on gasoline, stated:

"The Federal excise tax upon gasoline in question here is not a tax on the gasoline itself or on the manufacture, production or importation thereof, but is a tax only on the sale of the gasoline * * *. 'It is laid on the sale, and on that alone.' * * * The tax attaches at the instant the sale is made. * * * The State Sales Tax likewise is a tax on the sale. No tax is laid either under the Act of Congress or under the State Sales Tax Act until there is a sale. Both the Federal tax and the State tax are imposed upon the sale."

The statement is not quite exact, as applied to the Federal gasoline tax. The Act of Congress in levying such tax (26 USCA 3412) expressly provides that for the purposes of the Act the use of gasoline by the importer or manufacturer himself shall be considered a

sale. Even that express provision indicates that in the mind of Congress the sales tax would not, in the absence thereof, have included a tax on the use of gasoline. The first act of this state, Sec. 2, Ch. 73, Session Laws of 1923, levying a tax in connection with gasoline provided that the tax should be levied upon the gasoline sold. The section was amended by Ch. 89, Session Laws of 1925, providing that the tax should be levied "on all gasoline used or sold," showing that at that time a tax on a sale of gasoline was considered as not embracing a tax on the use thereof. And that a tax on "sales" of property generally does not, as ordinarily understood, include a tax on the use thereof is clearly evidenced by the many "use-tax" laws, passed in the various states of the Union, including our own. These laws are considered as complementary to the laws relating to Sales taxes. Henneford et al. v. Silas Mason Co., 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524. In that case the court among other things stated that "the fact that the legislature has chosen to lay a tax upon the use of chattels that have been bought does not make the tax upon the use a tax upon the sale." The converse would be equally true, that a tax upon the sale does not make it a tax upon the use. For one thing to be a complement of another thing, does not mean that it is identical therewith. In the late case of Mann v. McCarroll, 198 Ark. 628, 130 S. W. (2d) 721, 725, the following apt statement appears:

"It may be said in passing that a sales tax and a use tax are by no means identical. The rule is that in a sales tax the property sold changes hands. There is a change of ownership. The new owner who purchases pays the sales tax to the seller who becomes the agent for the state for its collection. The buyer pays the tax as an incident to the price. In a use tax, there is no change of possession, no change of ownership, but the owner pays this tax which is an excise or exaction charged because of the owner's privilege to exercise or assert some of the elements of ownership over the

property. In the use tax the seller does not collect the tax as an agent for the state, but the buyer, according to the contention made here, must account for the property which he actually owns and pay a tax allegedly of the same percentage as a sales tax."

We think it clear that the Act of Congress here in question, which merely gave permission to lay a tax upon sales, did not include permission to tax the use of property. It follows that the judgment of the trial court must be affirmed, and it is so ordered.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.