Richard Charles BROWN, a/k/a Richard Charles Bradenberg, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4904.

Supreme Court of Wyoming.

Feb. 22, 1979.

---

* Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired. ROONEY, J., did not participate.

Dan R. Price, II of Morgan & Brorby, Gillette, for appellant.

V. Frank Mendicino, Atty. Gen., Peter J. Mulvaney, Senior Asst. Atty. Gen., and Sharon A. Fitzgerald, Legal Intern, Office of the Atty. Gen., Cheyenne, and Willis C. Geer, Campbell County Atty., Gillette, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and GUTHRIE, J., Retired *.

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the Court on December 31, 1978. By order of the Court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5,

GUTHRIE, Justice, Retired.

Appellant was convicted of a crime of assault with a dangerous weapon in violation of § 6–70B, W.S.1957, 1975 Cum.Supp. (now § 6–4–506(b), W.S.1977). This appeal entails the review of two claimed instructional errors, both of which require consideration for the first time of the effect of the amendment enacted by the legislature in 1975, being Chapter 70, S.L. of Wyoming 1975. This amendment classified an unloaded firearm as a dangerous weapon as a matter of law.

The two areas in which appellant claims error involve a claim that the court failed to correctly state the elements of the offense of assault with a dangerous or deadly weapon, basing this claim upon the view that the instruction necessarily should have included the definition of simple assault as defined in § 6–4–501, W.S.1977, requiring proof of an unlawful attempt to accomplish a violent injury upon the person of another, coupled with the present ability to accomplish such injury. The second contention is that the court was in error in refusing to give two tendered instructions affecting his defense theory of voluntary intoxication. He asserts that specific intent, being a necessary element of the crime in question, that he was entitled to instructions that evidence of voluntary intoxication may be considered for the purpose of negativing the state of mind necessary to commit a specific intent crime. We find no error and will affirm this conviction.

On March 8, 1977, in the evening, two officers of the Gillette Police Department, while on patrol, noticed the erratic movements of a pickup which was being operated without lights. Appellant and an acquaintance were occupants of this vehicle. They had been drinking at a local tavern for some hours. The officers forced the pickup into a parking lot where it was

Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the Court in this case.

stopped. Officer Ross left the police car and approached the truck from the left rear, while the other driver radioed the police department to advise of the stop. As Ross approached the vehicle, he observed appellant exchanging seats with the driver. Ross then ordered, "Hold it. Police officer. That isn't going to work." Appellant pointed a gun out the window of the cab and in the direction of Ross, who immediately grabbed it by the barrel and pushed it away, and the gun was discharged almost simultaneously within about four to six inches from his face. Ross then took the gun from appellant and threw it over his shoulder and placed the appellant and the driver under arrest. The gun was a single-shot .22 calibre rifle with a sawed-off barrel and with the stock cut into the form of a pistol grip.

After this arrest there was an information ultimately filed which charged that appellant willfully, unlawfully and maliciously perpetrated an assault upon Ross while armed with a dangerous and deadly weapon, and this information alleged violation of § 6–70B. This statute provides:

"Whoever, while armed with a dangerous or deadly weapon, <u>including an unloaded firearm</u>, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both." (Underlining supplied.)

This statute, until 1975, did not include the words "including an unloaded firearm," which were added by amendment at that time. This amended statute was in effect at the time this occurrence took place. The court gave the following instruction:

"The defendant is charged with the crime of assault with a dangerous or deadly weapon. The defendant has entered a plea of not guilty.

"To establish this charge each of the following claims must be proved:

"1. That the defendant intentionally and maliciously attempted to do bodily harm to David A. Ross;

"2. That the defendant had the apparent ability to cause such bodily harm;

"3. That defendant's conduct resulted in David A. Ross being in immediate apprehension of bodily harm;

"4. That the defendant was armed with a dangerous or deadly weapon;

"5. That the act alleged occurred on or about the 8th day of March, 1977, in Campbell County, Wyoming."

 Appellant now contends that the use of the words "apparent ability" rather than "present ability" in defining the essential elements of the charge is reversible error. In reliance upon *Evanson v. State*, Wyo., 546 P.2d 412, he also asserts that the instruction incorrectly defined the offense by requiring an attempt to "do bodily harm" rather than "to commit a violent injury." These contentions, however, as well as the brief of the State, fail to properly consider the effect of the amendatory language which was inserted in the statute and which was in effect when the earlier authorities upon which appellant relies were decided. Nor will we consider this last suggested error because we do not find specific exception taken to this instruction objecting to the use of the words "do bodily harm" rather than "to commit a violent injury." Because the record does not reveal any specific objections, we do not consider it. *Reeder v. State*, Wyo., 515 P.2d 969, 971–972. We are then concerned with the intent of the legislature in making this amendment, and must repeat certain rules. It is presumed that when such an amendment is enacted to an existing statute that some change in the existing state of the law was intended and that the court should endeavor to make such amendment effective, *DeHerrera v. Herrera*, Wyo., 565 P.2d 479, 483; *State v. Yellowstone Park Co.*, 57 Wyo. 502, 121 P.2d 170, 171, certiorari denied 316 U.S. 689, 62 S.Ct. 1280, 86 L.Ed. 1760. See also, 1A Sutherland, Statutory Construction, § 22.30, p. 178 (Sands 4th ed. 1972). We must also presume that such amendment was enacted with full knowledge of existing decisions and of the statutes with respect to the matter, *DeHerrera*

v. *Herrera, supra; Matter of Adoption of Voss,* Wyo., 550 P.2d 481, 486. Under these rules we must then consider the law as it had existed and had been interpreted before the amendment and the effect and purpose of the amendment changing it, with the idea of reconciling both provisions if possible. *People v. Johnson,* 270 Mich. 622, 259 N.W. 343, 344. If the conflict cannot be reconciled, the amendatory language must prevail since it is the latest decision of legislative will, *United States Fidelity & Guaranty Co. v. Anderson,* 38 Wyo. 88, 264 P. 1030, 1032.

■ No citation of authority is required to demonstrate that when the legislature enacted this amendment that it removed the element of the present ability so to do. It is readily apparent this raises an irreconcilable conflict with earlier authorities unless this amendment is construed as eliminating such element. See Concurring Opinion, Justice Thomas, *Fuller v. State,* Wyo., 568 P.2d 900, 904. Under this amendment, "apparent ability" must be the test applied, *Casey v. State,* Tenn.Cr.App., 491 S.W.2d 90, 93–94, as this statute now appears to be directed at the effect upon or the apprehension of the victim of the assault. To hold otherwise is to do violence to the clearly expressed words included in the amendment or to strike it from the law. This adopts the rule which has been denominated in some jurisdictions as a "show of violence rule" mentioned in *State v. Sawyer,* 28 N.C. App. 490, 221 S.E.2d 518, 520. This is the inference to be gleaned from the amendment.

This is a matter involving the exercise of legislative judgment with which we will not interfere. It is apparently similar in circumstance to the situation which moved the Minnesota Supreme Court to observe:

"If the legislative concern is to protect society from an assault upon one of its members, it is not illogical to conclude that the use in an assault of an unloaded firearm may have as devastating an effect upon community well-being as the use of a loaded firearm." *State v. Ott,* 291 Minn. 72, 189 N.W.2d 377, 380. See also *Commonwealth v. Henson,* 357 Mass. 686, 259 N.E.2d 769, 774.

It follows from our view of the effect and purpose of this amendment and the authorities cited that the rule in *Evanson v. State, supra,* at page 416, which by reference to § 6–4–501, W.S.1977 (formerly § 6–67, W.S. 1957), included as an element of this offense the present ability so to do is no longer applicable.

Appellant's second contention when he asserts that the failure of the court to give Instructions B and C was error is taken from our consideration by the admission in defendant's brief as follows:

"In order to further confirm that the defendant was entitled to the requested Instruction Nos. B and C, it must be shown that the defendant was charged with a specific intent crime." [1]

*Specific Intent*

■ The offense as charged herein is "a general intent case." *Vigil v. State,* Wyo., 563 P.2d 1344, 1355. This holding is

---

1. Instructions B and C were:
 "INSTRUCTION NO. B
 "Voluntary intoxication is a defense to a criminal charge, but when a particular intent or other state of mind is a necessary element of the offense charged, intoxication may be taken into consideration in determining whether the accused was capable of forming the necessary intent or state of mind."
 "INSTRUCTION NO. C
 "When a Defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the Defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged.
 "If from all the evidence you have a reasonable doubt whether Defendant was capable of forming such specific intent or mental state, you must give Defendant the benefit of that doubt and find that he did not have such specific intent or mental state."

in no manner modified or changed by the case of *Fuller v. State*, Wyo., 568 P.2d 900, which does hold that the charge of aggravated assault with the intent to commit murder in the second degree is a specific intent crime. However, based upon the record therein this court did find the defendant was guilty of aggravated assault with a deadly weapon based upon the definition recognized in *Vigil* and which makes the distinction between the completed offense and an unaccomplished attempt. Instruction B has its origin in § 6–1–116, W.S.1977 (§ 6–16, W.S.1957). In *Gustavenson v. State*, 1902, 10 Wyo. 300, 68 P. 1006, this court determined that such instruction was only proper in a case involving specific intent. The same rule has been recently discussed in *Goodman v. State*, Wyo., 573 P.2d 400, 402, 407. This later case calls attention to the words of the statute, "Where a crime rests in intention, . . .," this offense not being one involving specific intent, instruction was properly refused.

Instruction No. C apparently finds its genesis in § 7–11–304, W.S.1977 (formerly § 7–242.4, W.S.1957). Because this instruction by its own terms directs itself to a crime requiring specific intent, no discussion is deemed necessary. The writer assumes that this instruction was drawn in recognition of the statement in *Rice v. State*, Wyo., 500 P.2d 675, 677, as follows:

". . . To claim insanity on account of drunkenness is equivalent to claiming the absence of intent on account of drunkenness. The question is clearly a jury question; and the jury was fully instructed on this subject."

The judgment is, therefore, affirmed.

ROSE, J., concurs in the result.