Jim CHANNEL, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 5008.

Supreme Court of Wyoming.

April 3, 1979.

Tom C. Toner, of Redle, Yonkee & Arney, Sheridan, for appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Leonard D. Munker, Sr. Asst. Atty. Gen. (argued), Peter J. Mulvaney, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

RAPER, Chief Justice.

The appellant-defendant appeals from the judgment and sentence of the district court finding him guilty of forgery in violation of § 6–17, W.S.1957 (§ 6–2–101, W.S. 1977).[1] Defendant asserts as errors:

---

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. In pertinent part:
    "Every person who * * * shall utter, publish, pass or attempt to pass as true and genuine * * * any of the above named [check or draft] false, altered, forged or counterfeited matters as above specified and described, (knowing the same to be false, altered, forged or counterfeited,) with intent to prejudice, damage or defraud any person * * * shall be deemed guilty of forgery * * * ." (Bracketed material supplied.)

"I. The appellant was denied due process because of the district court's refusal to instruct on the appellant's theory of the case relating to the knowledge required for a conviction on the charge of passing an altered instrument.

"II. The district court failed to give a cautionary instruction relating to the testimony of Karen Butcher, an accomplice, who testified so that she would not be prosecuted for altering this check.

"III. The district court failed to give an instruction on the limited admissibility of a prior statement made by Karen Butcher as required by Wyoming Rules of Evidence, Rule 105.

"IV. The instruction which became the law of the case required the jury to find that Dorothea Graff filled in the check. There is no substantial evidence from which the jury could find that she did so.

"V. No proper foundation was established for the admissibility of the altered check, the checkbook, or the return statement of the bank." [2]

We will reverse the judgment and sentence of the district court and remand for new trial.

The State's key witness in this prosecution was Karen Butcher. Mrs. Butcher is the adopted daughter of Dorothea Graff. At the time of the incident, Mrs. Butcher was divorced and was seeing the defendant under circumstances which she characterized as a "love affair". On September 21, 1977, Mrs. Butcher went to her mother and obtained a check which was made out to defendant in the amount of eight ($8.00) dollars. Mrs. Butcher testified that she made out the check and her mother signed it. Mrs. Butcher stated that she immediately altered the check so that it was for eighty ($80.00) dollars. The record reveals that Mrs. Butcher also altered at least two other checks which she received from her mother in the amounts of six (6) and seven

(7) dollars to sixty (60) and seventy (70) dollars, respectively. Mrs. Butcher cashed these checks herself. She pleaded guilty to charges brought in connection with these checks and was placed on probation.

Later that same day, Mrs. Butcher picked up the defendant because they were going to Casper to attend a wrestling match. Mrs. Butcher and the defendant then proceeded to attempt to cash the checks which had been altered by Mrs. Butcher. They were unsuccessful at banks and so went to Boyd's Super Market to cash them. When Mrs. Butcher was asked at trial if defendant knew the check he cashed had been altered, she responded, "I honestly don't know." She was then asked by the prosecuting attorney if she had ever made any statements to the contrary, and she related that she had. The prosecutor then inquired about a written statement not given under oath at a trial hearing or other proceeding or deposition, indicating that defendant knew the checks were altered.[3] Defense counsel asked for a limiting instruction:

"MR. TONER: Your Honor, I would request an instruction to the jury that that statement was allowed for impeachment purposes only and is not evidence of the fact stated in it.

"THE COURT: I think at the proper time you may have an instruction to the jury."

When this matter was pursued during cross-examination, Mrs. Butcher testified to the circumstances surrounding that statement:

"Q. And this second statement that Mr. Wolfe asked you about, didn't Don Townsend [nephew of Mrs. Graff] come up to see you prior to the time that you made that statement?

"A. Yes, sir.

"Q. And didn't he take this checkbook that I'm holding here, prosecution exhibit three—do you recall that?

2. Because of our disposition, we will not address this issue.

3. The record indicates that Mrs. Butcher twice told Sheriff's officers that defendant *did not* know the check was altered; she testified at

the preliminary hearing that he *did not* know the check was altered. She gave a written statement that he did know and then started at trial that she *didn't know if he knew or not.*

"A. Yes, sir.

"Q. And shake that in your face and say, 'I've got the evidence on you.'

"A. Yes.

"Q. You better sign this statement?

"A. He said that Mr. Johnson [sheriff] wanted me to write out another statement.

"Q. So Mr. Johnson sent him in to get another statement?

"A. I don't know if that was the case or not.

"Q. So, Mr. Townsend had possession of this document which has been admitted into evidence at sometime?

"A. My mother must have handed it over to him.

"Q. How long had you been in jail when you made that second statement that Mr. Wolfe asked you about?

"A. Five days.

"Q. And where were your kids?

"A. In a foster home.

"Q. And would they let you see them?

"A. No.

"Q. Did you know that the welfare had custody of them?

"A. Yes, sir.

"Q. Were you worried about that?

"A. Yes, sir.

"Q. Did Mr. Townsend tell you that unless you made a statement, you wouldn't get out of jail?

"A. He insinuated that I wouldn't get out.

"Q. So, did you write out this statement?

"A. Yes, sir.

"Q. And did he make it clear to you that he wanted Jim Channel implicated in that statement?

"A. He never said. He just said, 'I have a statement to write out for the sheriff's office.'

"Q. And did you write one out?

"A. Yes, sir.

"Q. Did you put that language that Mr. Wolfe asked about in this statement so you could get out of jail?

"A. More or less.

"Q. So you could see your kids?

"A. Yes.

"Q. Do you recall telling me when you saw me in March that that statement was a lie, that Jim Channel knew about it?

"A. Yes, sir."

The defense introduced a series of witnesses on this point. Karen Butcher told defendant's sister that defendant had no idea the check had been altered. Karen Butcher told a hospital ward clerk that defendant didn't know the check had been altered. Karen Butcher told her babysitter that if defendant refused to have anything more to do with her, "she would screw him over and take him down with her if she was going to be punished."

Dorothea Graff also testified as a witness for the State. Mrs. Graff was eighty years of age at the time she testified and conceded that her recollection of the events was dim and confused. She recalled giving a check to defendant at a Sheridan store so that defendant could purchase a pair of overshoes for one of Karen Butcher's children and that the check was made out to K–Mart. As to the eight dollar check that was altered, she indicated in her testimony that she supposed she signed the check before there was any writing on it. Her testimony is extremely confused and hazy. In large part, it contradicts other evidence presented by the State. Mrs. Graff contradicts herself numerous times in direct examination, even where the prosecuting attorney was allowed to examine her with leading questions. Her testimony cannot be reconciled with that of Karen Butcher.

Two other witnesses were called on behalf of the State. Mrs. Claybaugh, a checker at Boyd's, cashed the altered check for defendant. She testified that she remembers the event like it happened yesterday that he told her Mrs. Graff was his aunt. Mrs. Claybaugh saw nothing suspicious about the check although she called Bill Rader, president and manager of Boyd's, to approve the check. When asked if she could identify the person who cashed the check, she chose someone from the audience

who was later. identified as Paul Martin. Bill Rader also testified but only to the fact that he approved the check, noticed nothing unusual about it and recalled that defendant endorsed it in his presence.

Defendant's stepfather testified that the night before the trip to Casper, Karen Butcher came to his house and said that she had a check for defendant for eighty dollars. She did not show them the check, but told them that her mother thought Jim Channel could take better care of the money than she could.

The jury returned a verdict of guilty.

We will address the question of the trial court's failure to give the limiting instruction first because it is dispositive of the appeal. Karen Butcher testified when examined by the prosecuting attorney that she honestly did not know if defendant knew the check was altered when he cashed it. The State then attempted to introduce evidence of a prior inconsistent statement she had given in writing to a sheriff's officer. The State conceded this was for impeachment. An attempt was made by defendant's counsel to require that the written statement be introduced because the document spoke for itself. The prosecuting attorney then offered the written statement, but the defense attorney objected to this on the basis that the document was hearsay and contained irrelevant matter. After some colloquy, the trial court decided the prosecutor could ask her what the prior inconsistent statement was:

"Q. (By Mr. Wolfe) All right, what was that statement?

"A. The first statement?

"Q. No, the second statement.

"A. That he knew of the altered check."

The defense attorney then asked for an immediate instruction to the jury that the statement was allowed for impeachment purposes only and was not evidence of the fact stated in it. The trial judge did not give an instruction but indicated defendant could have such an instruction at the proper time. No such instruction was subsequently offered or given.

Rule 802, Wyoming Rules of Evidence (W.R.E.), provides that hearsay is admissible only if it falls within one of the exceptions of Rule 803. Rule 801(d) [4] provides:

"(d) *Statements which are not hearsay.* A statement is not hearsay if—

"(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and, if offered in a criminal proceeding, was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him; or * * * ."

The statement, not under oath nor given under the circumstances outlined in "(A)" and offered in this case, is therefore hearsay and does not fall within any exception to the hearsay rule. No argument is made to the contrary and we perceive no such problem. Rule 607, W.R.E., provides that the credibility of a witness may be impeached by any party, including the party calling him. The prior statement of this witness does not qualify for substantive use to prove a fact but only for the limited

---

4. A changed rule has been proposed and adopted in some jurisdictions which would produce a different result in such a case as this. *State v. Acree,* Ariz.1978, 588 P.2d 836. The change affects Rule 801(d)(1)(A) and would be:

"(d) *Statements which are not hearsay.* —A statement is not hearsay if—

"(1) *Prior statement by witness.*—The declarant testifies at the trial or hearing and is

subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, * * *, or (B) * * * ."

Reference to a criminal proceeding and necessity of it being under oath in another proceeding has been omitted.

purpose of impeachment.[5] Weinstein and Berger, Weinstein's Evidence, ¶ 607[06], Vol. 3, ¶ 801(d)(1)[01] (1978); McCormick, Evidence, Ch. 15, § 34, p. 67.

Rule 105, W.R.E., provides:

"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

██ Such an instruction was requested at the time the evidence was admitted. It was refused. The trial judge was obligated to give it at that time. Wright and Graham, Federal Practice and Procedure, Evidence § 5065, (N.B., p. 328). See 2.103, Wyoming Pattern Jury Instructions Criminal (W.P.J. I.C.), p. 19.[6] The language of Rule 105 is plain that the giving of the instruction is mandatory. The failure to give the instruction as requested is reversible error. That is particularly true under the facts of this case where the State's evidence was not particularly strong and no case for harmless error can be justified. The potential for prejudice to the defendant is particularly strong in view of the fragile quality of the State's evidence.

Although failure to give a limiting instruction is determinative of the appeal, we make the following additional rulings on defendant's alleged errors since retrial is a possibility and these same questions may once again arise.

Defendant claims as error: Refusal to instruct on defendant's theory of the case relating to the knowledge required for a conviction based on the charge of passing an altered check.

The statute that defines the crime for which defendant was convicted requires

that the person passing an altered check *know* that the check is altered, footnote 1. The trial judge refused defendant's offered instruction:

"In order to find that the defendant knew the check was altered at the time he passed it, you must find that the defendant had actual knowledge that the check was altered. You may not find the defendant guilty if you find that the defendant should have known the check was altered or that a reasonably prudent man would have known the check was altered or that the defendant was aware of a probability that the check was altered or that the defendant believed that the check was altered, or even that the defendant could have ascertained that the check was altered if he made reasonable inquiry. Actual knowledge is required."

The trial judge gave:

"INSTRUCTION NO. 4

[Outlining the elements of the crime.]

\* \* \* \* \* \*

"Fourth, at the time the Defendant passed the check he *knew* it had been altered; \* \* \* "

(Emphasis added.)

"INSTRUCTION NO. 5

"The jury is instructed that the law of the State of Wyoming is:

"Every person who shall falsely pass as true and genuine an altered check *knowing* the same to be altered with intent to prejudice, damage or defraud any person or persons, shall be guilty of forgery." (Emphasis added.)

"At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted.

"You are again instructed that you must not consider such evidence for any purpose except the limited purpose for which it was admitted."

---

5. See Anno., "Use of prior inconsistent statements for impeachment of testimony of witnesses, under Rule 613, Federal Rules of Evidence," 40 A.L.R.Fed. 629.

6. Instruction 2.103, W.P.J.I.C.:

"Certain evidence was admitted for a limited purpose.

"INSTRUCTION NO. 10

"You may not find the defendant guilty simply because it appears that the check was altered and that he did in fact pass the check unless you find beyond a reasonable doubt that the defendant *knew* at the time he passed the check that the check was altered and that, so *knowing*, he attempted to pass it for the purpose of defrauding some person." (Emphasis added.)

"INSTRUCTION NO. 12

"The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent, the prosecution must prove that the defendant *knowingly* did an act which the law forbids purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case." [7] (Emphasis added.)

■■■ We can only conclude that these instructions, particularly No. 10, adequately covered the matter which defendant offered in his refused instruction. The offered instruction states an aspect of the law of forgery with which it deals. 37 C.J.S. Forgery § 37c.[8] However, when principles of requested instructions, even if correct, have been properly and sufficiently covered by other instructions, refusal is not error. *Benson v. State*, Wyo. 1977, 571 P.2d 595; see West's Wyoming Digest, Criminal Law, Key Number 829(1). We are not dealing with a situation where there was not testi-

mony from which defendant's knowledge might be inferred.[9] In addition to the appearance of the check itself and the fact that the check was altered and defendant passed it, there was testimony that defendant and Mrs. Butcher went first to banks, then to a bar, and finally to a grocery store in order to cash the check. There was testimony that defendant told the grocery store clerk that Mrs. Graff was his aunt in order to facilitate cashing the check.

We hold that the instructions given by the trial court adequately addressed defendant's theory,[10] that knowledge of the alteration was required as a necessary element of his conviction.

The defendant further contends that the trial judge should have given his offered instruction:

"The testimony of an individual who provides evidence against a defendant for immunity from punishment or for personal advantage or vindication must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. You must determine whether that individual's testimony has been affected by interest or by prejudice against the defendant."

Defendant claims this instruction is required because he was not allowed to pursue cross-examination of Karen Butcher as to her grant of immunity. In our view, the cross-examination was adequate and defendant was only foreclosed from pursuing this matter when his questioning became redundant and repetitive. We deem the decision in *Oldham v. State*, Wyo. 1975, 534 P.2d 107, to be controlling.[11]

---

7. See *Brown v. State*, Wyo. 1979, 590 P.2d 1312, for a discussion of specific-intent crimes.

8. An analysis of the cases which gave rise to the rule, as set out by defendant in the offered instruction, which are listed in the footnotes to the C.J.S. citation, reveals that it results from cases in which the jury was specifically instructed that they could consider the matter which defendant addressed in his instruction. The cases do not stand for the proposition the jury must be instructed that they may not consider those matters. It unnecessarily over-

states the standard imposed by statute. See *United States v. Gallo*, 1976, 177 U.S.App.D.C. 214, 543 F.2d 361.

9. See, *Narsingle v. State*, 240 S.W. 556, 91 Tex. Cr.App. 617, 1922.

10. See *Goodman v. State*, Wyo. 1977, 573 P.2d 400.

11. The instruction offered in Oldham was virtually identical to that under consideration here.

" * * * It is our view that if we are to properly honor the recognized principle that the jury is the sole judge of the credibility of the witnesses and the weight of testimony, it was not error to refuse to give such instruction, particularly when both of the witnesses to whom this might be applicable where exposed to thorough cross-examination and the fact of their immunity and interest in the case was clearly before the jury." Id., at 534 P.2d 110.

█ Here, the subject of immunity was adequately presented to the jury and if the cross-examination was abbreviated by the trial court, this was proper in view of defense counsel's repetitious questions. All other matters concerning the fact that Mrs. Butcher had changed her story frequently and that she was vindictive toward defendant were thoroughly aired and argued to the jury, and we perceive no error in the refusal of this particular instruction under the circumstances of this case.[12]

Defendant finally argues that there is a fatal variance in the information in that it alleges that Dorothea Graff filled out the check which defendant was charged with having passed. This variance also appears in an instruction to the jury concerning the elements of the crime. The jury was charged that they could find defendant guilty only if they believed beyond a reasonable doubt that Dorothea M. Graff completed and filled out a check in the amount of $8.00. Clearly the evidence is in conflict with this. Mrs. Graff's testimony is confused and uncertain. Karen Butcher testified that she wrote out the check and filled in the necessary information, and Mrs. Graff merely signed the check on the signature line.

Rule 49(a), W.R.Cr.P.,[13] provides that a variance which does not affect substantial rights shall be disregarded. Were this the only error in the case, we would be hard pressed to find it was so prejudicial as to require reversal. See discussion, Wright, Federal Practice and Procedure, Vol. 3, Criminal § 854.

The fact that the variance exists is indicative of a general lack of attention to detail by all involved in the trial. However, we would, generally speaking, decline to hold that such lack of attention alone would require reversal where prejudice simply does not result. Here the variance in the information spilled over into the instructions. The defense attorney called the variance to the attention of the trial judge and the prosecutor and thus the instructions should have been corrected. The defense attorney did not ask that this be done. This problem could and should have been remedied at trial; and we trust that if the case is retried, no such variance will appear.

Reversed and remanded for a new trial.

GUTHRIE, Justice, Retired, specially concurring.

I concur in the result herein based upon the failure of the trial court to give the requested cautionary instruction. I do not join in nor disapprove of the discussion of the remaining issues which I do not consider necessary or proper for disposal in this case and they are in the nature of dicta.

---

12. We are not confronted with a situation where a properly worded instruction as to an accomplice testifying such as that set out in W.P.J.I.C. § 2.104 (and authorities there cited) was offered. We point out for the limited purposes of this discussion that if such an instruction is offered in a proper case, its refusal would be error. However, this instruction was not offered and we decline to address any plain-error argument.

13. See cases annotated under the Rule.