**Norman KIRSCHBAUM, Appellant (Third–Party Plaintiff),**

**v.**

**Terry ANDERSON and Kim Anderson, d/b/a Anderson Paramedical Services, d/b/a Examination Services, Inc., Appellees (Third–Party Defendants).**

**No. 97–44.**

Supreme Court of Wyoming.

April 20, 1998.

Rehearing Denied May 15, 1998.

Mark W. Gifford of Gifford & Bonner, Casper, for Appellant.

Bruce N. Willoughby of Brown, Drew, Massey & Sullivan, Casper, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

The only question that the Court must resolve in this case is whether, on this record, Norman Kirschbaum (Kirschbaum) is to be prevented from collecting a judgment for wrongful interference with contract that he obtained against Terry Anderson and Kim Anderson, d/b/a Anderson Paramedical Services, d/b/a Examination Management Services, Inc. (Andersons). After judgment was entered against the Andersons, Kirschbaum collected a judgment in his favor against Examination Management Services, Inc. (EMSI) for wrongful interference with contract. The trial court ruled that EMSI and the Andersons were joint tort-feasors and that collection of the judgment against EMSI resulted in satisfaction of the judgment against the Andersons. Collateral questions are raised as to whether the doctrine of judicial estoppel prevents the assertion by the Andersons that they were joint tort-feasors with EMSI, and whether the post-trial motion by the Andersons was improperly considered because it amounted to a belated attempt to assert the defense of *res judicata.* The Court is satisfied that the record in this case demonstrates that while the theory of recovery was the same, the contracts that EMSI disrupted are distinguishable from those contracts with which the Andersons interfered. The Order on Satis-

faction and Release of Judgment is reversed with instruction to the trial court to reinstate the Judgment on Jury Verdict so that Kirschbaum can proceed with his efforts to collect that judgment.

In the Brief of Appellant, filed on behalf of Kirschbaum, the issue is set forth as follows:

Did Kirschbaum's collection of the $125,000 judgment for intentional interference with contractual relationships against EMSI have the effect of satisfying a smaller $20,000 award for the same legal theory against the Andersons?

In the Appellees' Brief, the Andersons state the issues as:

1. Appellant is entitled to only one recovery for his damages, and the District Court did not err when it set-off Appellant's damage award against Appellees where a prior judgment for the same tortious conduct had been previously entered and satisfied.

2. The doctrine of judicial estoppel does not preclude Appellees from asserting that they were joint tort[-]feasors with EMSI.

3. Appellees' post-trial motion was not a res judicata defense which was untimely filed.

Kirschbaum and EMSI entered into a contract on September 5, 1990, pursuant to which Kirschbaum agreed to manage EMSI's medical services operation in Wyoming and Montana. Pursuant to the five year written contract, Kirschbaum, under EMSI's name, agreed to furnish medical and paramedical examination services to EMSI's approved customers. At that time, Kirschbaum had a network of about 25 paramedical examiners. Under the contractual arrangement, Kirschbaum would employ one of his subcontractors to perform an examination for EMSI, and the charges for the examination would be billed through EMSI, with Kirschbaum and his subcontractor each receiving a percentage of the fee. During the three years following the making of the contract, Kirschbaum expanded his network of examiners to a total of 253, while increasing gross revenues in Montana and Wyoming more than ten fold.

The business had grown sufficiently by 1992 such that Kirschbaum contracted with the Andersons for them to manage a branch office in Billings, Montana. The Andersons' responsibilities gradually were expanded to extend to supervision of all of Kirschbaum's examiners in the state of Montana.

The critical date with respect to this litigation came on May 3, 1993. Without advising Kirschbaum in any way, Rita Weeks, an EMSI vice-president, went to the Andersons' office in Billings. Weeks told the Andersons that Kirschbaum's contract with EMSI was going to be terminated, and she asked the Andersons to begin managing the activities previously belonging to Kirschbaum directly for EMSI. A written contract between the Andersons and EMSI was made immediately, and on the afternoon of May 3, 1993, the tortious activities occurred. Again, without advising Kirschbaum, the Andersons, Weeks, and yet another EMSI vice-president made a concerted effort to take over all of Kirschbaum's subcontractors. With each of these individuals calling different subcontractors, the four went down Kirschbaum's list of subcontractors, advising each examiner whom they were able to reach, that Kirschbaum's contract with EMSI was being terminated. All were advised that the Andersons now had the contract with EMSI. As a follow-up, the Andersons sent a letter to each of the facilities through which the exams were routed advising them of the change. The ultimate result of that afternoon's activities was that Kirschbaum lost to the Andersons all but 6 of his subcontractors.

It was not until the next day that Kirschbaum received a facsimile transmission from EMSI in which he was advised that his contract was terminated. A few days later, EMSI filed an action against Kirschbaum in which it sought to enforce a covenant not to compete and to collect sums allegedly owed to EMSI by Kirschbaum. Kirschbaum filed a counterclaim for breach of contract and intentional interference with the contractual relationships that previously had existed between Kirschbaum and his independent examiners. In that litigation, the jury returned a verdict for Kirschbaum on both claims, specifically awarding him $125,000 for

intentional interference with contract. That verdict was affirmed by this court in *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686 (Wyo.1996) (*EMSI I* ).

The Andersons assigned a $14,000 collection claim against Kirschbaum to Rocky Mountain Recovery, Inc. early in 1995. Kirschbaum actually was served with process in that collection action during the course of the trial of his case against EMSI. Kirschbaum responded by an answer in which he denied the debt, and brought a third party action against the Andersons, in which he claimed, among other things, breach of contract, breach of good faith and fair dealing, and intentional interference with contracts with his network of examiners because of the role played by the Andersons personally in taking over his network of examiners. In that case, the jury returned a verdict for Rocky Mountain Recovery, Inc. in the amount of $4,855.02 for its claim against Kirschbaum, and with respect to Kirschbaum's claims against the Andersons, he was awarded $5,000 for breach of good faith and fair dealing and $20,000 for intentional interference with the contracts. On August 8, 1996, the trial court entered a judgment in favor of Kirschbaum on that verdict.

The opinion of this Court affirming the verdict in *EMSI I* was filed on November 1, 1996. Kirschbaum proceeded to collect that judgment, and an Order Recognizing Satisfaction of Judgment was entered on November 19, 1996. The Andersons then filed a Third Party Defendant's Motion For An Order Finding Satisfaction and for Release of Judgment in Kirschbaum's case against them. The Andersons asserted that since they were joint tort-feasors with EMSI, a double recovery against the Andersons was precluded by the "one satisfaction" rule.

The Andersons' motion was granted by the district judge to the extent of the $20,000 award for intentional interference with contract. In a decision letter, the district court explained the decision in this way:

A fundamental principle is that an injured person is entitled only to be compensated once for his loss. The *Restatement Second of Torts*, Section 885(3), provides that a payment by any person in compensation of a claim for a harm for which others are liable as tort feasors diminishes the claim against the tort feasors, at least to the extent of the payment made.

In these two cases, the basis for the judgments arises out of the same occurrence and is for the identical acts of interference with the same contract. The first judgment against EMSI for $125,000.00 having been satisfied, the Third Party Plaintiff would receive a double recovery if the Andersons were required to pay an additional $ 20,000.00.

We accept the fact that the ruling of the district judge would be sound if EMSI and the Andersons were joint tort-feasors.

We have heretofore looked to Black's Law Dictionary to capture a definition of tort-feasor. *Garner v. Hickman*, 709 P.2d 407, 413 (Wyo.1985); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 934 (Wyo.1981). In a similar vein we look to Black's Law Dictionary for its definition for "joint tort-feasors:"

Term refers to two or more persons jointly or severally liable in tort for the same injury to person or property. Those persons who have acted in concert in their tortious conduct and are, accordingly, jointly and severally liable. Those who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury. * * *

BLACK'S LAW DICTIONARY 839 (6th ed.1990) (citation omitted).

■ The question of whether two actors are joint tort-feasors is usually perceived as a question of fact. *Northern Utilities Div. of KN Energy, Inc. v. Town of Evansville*, 822 P.2d 829, 834 (Wyo.1991)("The right to contribution rests upon the question of whether the parties are joint tort-feasors and presents a question of fact for the jury to determine.") On the other hand, if uncontroverted facts exist that serve to demonstrate the relationship of the parties, we will resolve the question as a matter of law, and our review is accomplished under the *de novo* standard. *See Murphy v. Housel & Housel*, 955 P.2d 880 (Wyo.1998); *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 569 (Wyo.1996).

In this appeal, Kirschbaum's essential contention is that the resolution by the trial judge was based on an invalid premise. Kirschbaum asserts that he had separate contracts with each of the 253 examiners, and that the responsibility of the Andersons for intentional interference with those contracts would relate to those examiners that they called on May 3, 1993. He asserts that conversely, EMSI was only held liable for intentional interference with the contracts of those examiners that its vice-presidents contacted on May 3, 1993. The essence of that position is that the Andersons and EMSI were not joint tort-feasors because they interfered with different contractual relationships.

We are satisfied that the record in this case sustains Kirschbaum's position. The jury was aware of the judgment entered against EMSI, and logic dictates that if the parties were joint tort-feasors the verdict against the Andersons should have been in the same amount as the verdict against EMSI. It was not, and this serves as a record demonstration that the jury in this case perceived a different injury having been inflicted by the Andersons. Kirschbaum testified about his recruitment of individual examiners over the years, and he explained that some examiners worked under written contracts, but that he preferred "hand shake" agreements. He testified that some of the examiners worked out of their own homes while others had offices that they owned individually, in a cooperative effort with Kirschbaum, and still others worked out of hospitals or clinics. Kirschbaum explained to the jury that he paid a higher percentage to examiners who would market themselves and bring in additional business. None of this testimony was disputed by the Andersons, nor did they provide any contrary evidence.

Instead, they urged upon the trial court the proposition, which they also argue on appeal, that Kirschbaum really only had one contract with all of his 253 examiners across the two states. They assert that Kirschbaum suffered only one injury because of the interference with the contract, not 253 different injuries. The jury found to the contrary, and the disparity between the two verdicts

establishes that the jurors in this case believed that the Andersons, by the telephone calls they made, had interfered with different contractual relationships than those interfered with by EMSI. The evidence would support Kirschbaum's theory and leads to the conclusion that there were separate contracts with each of the examiners resulting in a finding by the jury that the Andersons were liable for interference with the contracts of the examiners they individually contacted. The explanation by the district judge is clear, and he ruled that EMSI and the Andersons were jointly liable for "identical acts of interference with the same contract." The record does not support this conclusion by the district judge, and we hold it to be erroneous.

We do not address Kirschbaum's alternative arguments dealing with judicial estoppel or a belated effort to assert *res judicata.* Kirschbaum is entitled to reinstatement of his judgment against the Andersons because it was for a different harm than those encompassed by the verdict against EMSI.

The Order on Satisfaction and Release of Judgment is reversed, and the trial court is instructed to reinstate the Judgment on Jury Verdict in favor of Kirschbaum and to allow him to proceed to collect that judgment.