Hazel RUDY, Appellant (Defendant),

v.

Sharon BOSSARD and Lawrence L. Bossard, Appellees (Plaintiffs).

No. 99–120.

Supreme Court of Wyoming.

Feb. 28, 2000.

**482**

Representing Appellant: Timothy W. Miller of Reeves & Miller, Casper, Wyoming.

Representing Appellees: Patrick M. Hunter, Casper, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Hazel Rudy appeals from the judgment entered by the trial court after a jury returned a verdict in favor of Appellees Sharon Bossard (Sharon) and Lawrence Bossard (Lawrence).

We affirm.

## ISSUES

Rudy presents the following issues for our consideration:

1. Whether the trial court prejudicially erred by admitting Plaintiffs' Exhibit 13, the hearsay report of a doctor who did not testify at trial.

2. Whether the trial court prejudicially erred by admitting Plaintiffs' Exhibit 14, a 113–page pain diary composed by appellee Sharon Bossard.

3. Whether the trial court erred in denying defendant's motion for judgment as a matter of law on Sharon Bossard's claim for future medical expenses.

4. Whether the trial court erred by failing to deduct from the Judgment the settlement payment appellees received from appellant's alleged employer, C & Y Transportation.

## FACTS

This case stems from an automobile accident which occurred in the morning of January 24, 1996. Rudy was driving a pilot car accompanying an oversized load. She entered I–25 from an on-ramp in Casper and immediately steered to the left, across the right-hand lane of traffic, and into the left-hand, or passing, lane.

At the same time, Lawrence was driving a van in the left-hand lane of I–25, and his wife, Sharon, was riding in the front passenger seat. Rudy steered her car directly in front of the Bossard vehicle, and the two vehicles collided. Although Sharon did not state at the scene of the accident that she was injured, she noticed pain in her neck, right shoulder, and right lower back over the course of the day. Sharon sought treatment at an emergency room on January 25, 1996.

The emergency room physician diagnosed her condition as seat belt trauma.

Sharon's personal physician, Johnny Mack Tooke, M.D., examined her in March 1996. He determined that Sharon was suffering from a cervical sprain and muscle spasms. Dr. Tooke prescribed an anti-inflammatory medication and directed Sharon to receive physical therapy. In August 1996, Dr. Tooke referred Sharon to Lawrence Jenkins, M.D., an orthopedic surgeon, because she was still experiencing pain in her right lower back. Dr. Jenkins ordered an MRI scan and a CT scan of Sharon's back. The tests revealed that Sharon had a fragmented facet joint between the third and fourth lumbar vertebrae.

The Bossards filed a complaint in the district court against Rudy and her employer, C & Y Transportation Co. C & Y Transportation settled with the Bossards, and the claims against it were dismissed. The Bossards tried their claims against Rudy to a jury in November 1998. At the conclusion of the trial, the jury returned a verdict finding Rudy ninety percent at fault and Lawrence ten percent at fault. The jury also found that Sharon's damages were $90,000 and Lawrence's damages were $10,000. Rudy asked the trial court to reduce the amount of the judgment against her by $5,000 to account for C & Y Transportation's settlement with the Bossards. The trial court refused her request and entered a judgment which was consistent with the jury's verdict. Rudy filed a timely notice of appeal.

## DISCUSSION

### A. Evidentiary Rulings

■■■ Rudy claims that the trial court erred by allowing Plaintiff's Exhibit 13 and Plaintiff's Exhibit 14 to be admitted into evidence because they were inadmissible hearsay. Trial courts have discretion in determining whether or not evidence is admissible. *Clark v. Gale,* 966 P.2d 431, 435 (Wyo. 1998). We will reverse a trial court's determination concerning the admissibility of evidence if the trial court abused its discretion. *Id.; Hodges v. State,* 904 P.2d 334, 340 (Wyo. 1995). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could [have] reasonably conclude[d] as it did." *Hilterbrand v. State,* 930 P.2d 1248, 1250 (Wyo.1997).

■■■ Even when this Court determines that the trial court erred in ruling on the admissibility of evidence, we disregard errors which are harmless. W.R.C.P. 61; W.R.A.P. 9.04; W.R.E. 103; *see also Clark,* 966 P.2d at 435. "An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights." *Candelaria v. State,* 895 P.2d 434, 439–40 (Wyo.1995). We reverse a judgment if an error in the admission or exclusion of evidence causes " 'a miscarriage of justice or result[s] in damage to the integrity, reputation, and fairness of the judicial process [or possesses] a clear capacity to bring about an unjust result.' " *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181, 1188 (Wyo.1994) (quoting *Gluckauf v. Pine Lake Beach Club, Inc.,* 78 N.J.Super. 8, 187 A.2d 357, 366 (1963)); *see also Clark,* 966 P.2d at 435.

■■■ Plaintiff's Exhibit 13 was a letter written by Dr. Jenkins to Dr. Tooke which explained the results of the MRI and CT scans and his diagnosis of Sharon's condition. The Bossards offered the letter as evidence, and Rudy objected to it, claiming it was hearsay. The Bossards argued that the letter was admissible under the exception to the hearsay rule set out in W.R.E. 803(4), and the trial court allowed the letter to be admitted into evidence.

W.R.E. 803(4) states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (4) *Statements for purposes of medical diagnosis or treatment.* —Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar

as reasonably pertinent to diagnosis or treatment.

Rudy argues that the hearsay exception set out in W.R.E. 803(4) applies to statements made by a patient and does not apply to statements made by one doctor to another. This Court has not previously addressed the scope of the hearsay exception set out in W.R.E. 803(4) or the specific question of whether or not the exception applies to statements made by doctors. We do not believe, however, that this is the proper case in which to delve into this complicated evidentiary issue because, even if we were to decide that the letter was not admissible under W.R.E. 803(4), we still would not reverse the judgment because the record clearly shows Rudy was not prejudiced by the admission of the letter. Dr. Tooke testified quite extensively, without objection, about the contents of the letter prior to it being offered for admission into evidence. The actual admission of the letter did nothing more than corroborate Dr. Tooke's testimony, and, consequently, it did not prejudice Rudy.

■ Plaintiff's Exhibit 14 was a diary Sharon kept during 1996 which described her symptoms. The Bossards asked the trial court to admit the diary into evidence. Rudy objected to admission of the diary, claiming it was inadmissible hearsay. Pursuant to the hearsay exception set out in W.R.E. 803(5), the trial court allowed Sharon to read from the diary during her testimony, and it also allowed the diary to be admitted into evidence.

W.R.E. 803(5) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(5) *Recorded recollection.*—A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Under W.R.E. 803(5), a memorandum or record may be read into evidence by a witness as long as: the witness once had personal knowledge of the matter, the record or memorandum was prepared by the witness when it was fresh in her memory, the record or memorandum accurately reflected the witness' knowledge, and the witness did not have sufficient recollection at the time of the trial to enable her to testify fully and accurately. 31 Michael H. Graham, Federal Practice and Procedure: Evidence § 6756 (interim ed.1997).

Sharon testified that she kept the diary on nearly a daily basis during 1996 and, although she had general memories about her physical condition, she could not remember the specifics of her day-to-day symptoms without referring to the diary. We conclude that the Bossards established a sufficient foundation for the diary, and the trial court did not abuse its discretion by allowing Sharon to read entries from the diary to the jury.

■ The trial court also allowed the entire diary to be admitted into evidence. The Bossards concede on appeal that, under the plain language of W.R.E. 803(5), a recorded recollection may be read into evidence but the record itself cannot be admitted. W.R.E. 803(5); 31 Graham, *supra.* Accordingly, the trial court's decision to admit the diary into evidence pursuant to W.R.E. 803(5) was erroneous.

■ Nevertheless, we agree with the Bossards that the admission of the diary into evidence did not prejudice Rudy. Sharon read extensively from the diary during her direct testimony. We have compared her trial testimony with the entire diary and conclude that there was no material evidence included in the diary which was not related to the jury during Sharon's testimony. Furthermore, in light of Sharon's extensive testimony about the pain she experienced as a result of the injury to her back, the admission of the diary did not unduly emphasize its importance as evidence in the case. We cannot say, therefore, that admitting the diary caused a miscarriage of justice or an

unjust result or it damaged the integrity, reputation, and fairness of the judicial process.

## B. Future Medical Expenses

Rudy maintains that the trial court erred when it denied her motion for a judgment as a matter of law on Sharon's claim for future medical expenses. The Bossards argue that the trial court properly allowed the jury to consider Sharon's future medical expenses. We agree with the Bossards.

 Rudy moved for a judgment as a matter of law after the Bossards rested their case.

Our standard of review is the same whether it arises in the procedural context of a motion for judgment as a matter of law prior to the submission of the case to the jury (formerly, a motion for a directed verdict) or in the context of a renewed motion for judgment as a matter of law after the jury has returned a verdict (formerly, a motion for judgment notwithstanding the verdict). We undertake a full review of the record without deference to the views of the trial court. The test to be applied is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. We view the evidence in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that may be drawn from the evidence. When the facts permit the drawing of more than one inference, it is for the jury to choose which will be utilized. Since a judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it should be cautiously and sparingly granted.

*John Q. Hammons Inc. v. Poletis,* 954 P.2d 1353, 1356 (Wyo.1998) (citations and footnote omitted).

 Rudy claims that there was insufficient evidence to allow the jury to consider Sharon's claim for future medical expenses

because Dr. Tooke did not testify to a reasonable degree of medical probability that Sharon would incur those expenses. We emphasized in *Weber v. McCoy,* 950 P.2d 548, 551–52 (Wyo.1998), that the law does not require a physician to testify using the technical words "reasonable medical probability" in order for his testimony to be considered competent medical opinion. We consider the substance of the physician's testimony rather than whether or not he used the technical terminology. 950 P.2d at 551. Ultimately, we must determine whether the doctor conveyed that it was more likely than not that the patient would require future medical treatment. *Id.; Vassos v. Roussalis,* 658 P.2d 1284, 1290–91 (Wyo.1983).

 Dr. Tooke testified that Sharon would need to take an anti-inflammatory medication for the remainder of her life and, on occasion, would also need to take a medication to counter the side effects of the anti-inflammatory drug. He also testified as to the costs of those medications. Dr. Tooke testified further that Sharon would benefit from physical therapy and should have physical therapy checkups a couple of times per year. Evidence was presented as to the costs of the physical therapy evaluations and sessions. We conclude that this evidence was sufficient to warrant allowing the jury to consider the issue of Sharon's future medical expenses.

## C. Credit for Settlement

 Rudy contends that the trial court erred by refusing to give her credit on the judgment against her for the amount C & Y Transportation paid to settle with the Bossards. The Bossards argue that the trial court correctly applied Wyoming law when it refused to give Rudy credit for the settlement. We agree with the Bossards.

Rudy asserts that she is entitled to credit for the amount of C & Y Transportation's settlement because the law does not favor double recoveries. It is true this Court has acknowledged that principle of public policy in prior cases. *See, e.g., Wilder v. Cody Country Chamber of Commerce,* 933 P.2d 1098, 1105–06 (Wyo.1997); *Miller v. Campbell County,* 901 P.2d 1107, 1113 (Wyo.1995).

We believe, however, that the question presented in this case requires a more comprehensive analysis than a simple application of the rule disfavoring double recoveries allows.

██ Wyoming does not have a statute directly addressing the setoff issue presented in this case. However, there are a number of statutes that give some indication of the legislature's intent in this regard. Wyo. Stat. Ann. § 1-1-109 (LEXIS 1999) indicates that each defendant in a tort case is responsible for his proportionate share of the total fault as determined by the jury. Wyo. Stat. Ann. § 1-1-108 (LEXIS 1999) allows a party to be reimbursed for his voluntary partial payment of a claim against him, but it does not provide credit for a payment made by a third person. *Haderlie v. Sondgeroth*, 866 P.2d 703, 711-12 (Wyo.1993). Wyo. Stat. Ann. § 1-1-119 (LEXIS 1999) provides that a release given to one person who is liable in tort does not discharge the other tortfeasors unless the release language specifically states that they are to be released. When read collectively, these statutes leave us with the distinct impression that the Wyoming legislature intended for each defendant to be, in general, solely responsible for his proportionate share of the judgment entered against him.

We turn now to relevant case law for additional guidance on this issue. In *Haderlie*, Sondgeroth filed suit against several defendants, alleging that their negligence caused his damages. 866 P.2d at 706-07. All the defendants, except Haderlie and his employer, settled with Sondgeroth prior to the trial. 866 P.2d at 707. At the conclusion of the trial, the jury returned a verdict finding Haderlie was entirely at fault and the remainder of the actors were not at fault. *Id.* Haderlie sought to have the amounts of the other defendants' settlements subtracted from the judgment against him. *Id.* This Court held that he was not entitled to credit for the codefendants' settlements because the jury had found him to be one hundred percent at fault and, under Wyoming's comparative fault statute, each tortfeasor is required to pay his proportionate share of the judgment. 866 P.2d at 708 (citing § 1-1-109). We stated that, because the settling plaintiff

bears the risk he will settle for an amount less than a jury may later determine he is owed by a defendant, he should also be entitled to reap any benefit which may result from a favorable settlement reached before trial with one of several codefendants. 866 P.2d at 710. This Court acknowledged that, although this principle of law may, in some cases, result in a windfall for a plaintiff, it serves the important public policy of encouraging settlement of disputes. 866 P.2d at 709-10 (citing *Rambaum v. Swisher*, 435 N.W.2d 19, 23 (Minn.1989)). We commented further that, in choosing who should reap the benefit of a pretrial settlement—a nonsettling defendant or an injured plaintiff—the correct policy choice is clear: The injured plaintiff should be favored over a nonsettling defendant. 866 P.2d at 710.

Rudy directs us to *Villarini–Garcia v. Hospital Del Maestro*, 112 F.3d 5 (1st Cir. 1997), in support of her argument that the Bossards are entitled to only one satisfaction of their claims and she should, therefore, be permitted to receive credit for C & Y Transportation's settlement with them. At first glance, the *Villarini–Garcia* case seems to be on point. In that case, a patient sued her doctor and a hospital for medical malpractice associated with a surgery on her back. 112 F.3d at 6. Prior to the trial, the plaintiff settled with the hospital, whose liability for the plaintiff's damages was vicarious. 112 F.3d at 6-7. At the conclusion of the trial, the jury returned a verdict against the doctor, and the trial court entered a judgment in accordance with the verdict. *Id.* The doctor asked the trial court to deduct the amount of the hospital's settlement from the judgment against him, but the trial court refused. 112 F.3d at 6.

The court of appeals looked to the Restatement (Second) of Torts § 885(3) (1991) and concluded that the trial court erred when it refused to give the doctor credit for the hospital's settlement. 112 F.3d at 7. Section 885(3) states that any payment made in compensation of a claim reduces the liability of the remaining defendants regardless of whether or not the person making the payment is liable to the injured party. *Id.* The ruling in *Villarini–Garcia* contradicts our

holding in *Haderlie.* If we had applied the principle set out in § 885(3) in the *Haderlie* case, we would have been compelled to conclude that Haderlie was entitled to credit for the other defendants' settlements. In fact, the dissenting justice in *Haderlie* referred to § 885(3) in his dissent, but the majority obviously was not persuaded by that rule of law. 866 P.2d at 723–24 (Thomas, J., dissenting); *see also Kirschbaum v. Anderson,* 957 P.2d 836 (Wyo.1998). We refuse, therefore, to follow the court of appeals' reasoning in *Villarini–Garcia* here because it conflicts with our decision in *Haderlie.*

*Day v. Davidson,* 951 P.2d 378 (Wyo.1997), also merits discussion in our analysis of the issue presented here. In that case, a store employee apparently placed a bookcase on a counter. 951 P.2d at 380. The bookcase fell from the counter, struck Mrs. Day, who was a customer in the store, and injured her. *Id.* Mrs. Day and her husband brought a lawsuit against the store. *Id.* Prior to the trial, the store offered to have a judgment entered against it, and the Days accepted the offer. *Id.* The judgment stated that the store was vicariously liable for its employee's negligence. 951 P.2d at 379–80. The Days subsequently brought suit against the employee, alleging he was negligent. 951 P.2d at 381. The district court granted a summary judgment in favor of the employee, concluding that the Days' claims against the employee were barred by the doctrines of collateral estoppel and res judicata. *Id.*

The Wyoming Supreme Court affirmed the district court's decision in *Day* but on a different basis. 951 P.2d at 379–80. We determined that a judgment entered by consent of the parties must be treated as an adjudication on the merits. 951 P.2d at 382. This Court ruled that, when a judgment is entered against a party who is vicariously liable for the injured party's damages, the injured party is bound by the amount of damages recited in the judgment. *Id.* Accordingly, the total amount of damages the Days could obtain for Mrs. Day's injury was the amount of damages set out in the judgment against the store. 951 P.2d at 382–83. We also ruled that the employee was entitled to have the amount paid by the store credited against any judgment entered against

him. 951 P.2d at 383. Because the Days were not entitled to additional compensation from the employee, the district court properly entered a summary judgment in the employee's favor. *Id.*

The *Day* case is distinguishable from the case at bar because C & Y Transportation voluntarily settled with the Bossards before the trial and a judgment was not entered against it. The settlement was not, therefore, conclusive as to the amount of the Bossards' damages, and the principles stated in *Day* with regard to credit against a subsequent judgment do not apply here.

The jury found that Rudy was ninety percent at fault. If Rudy were given credit for C & Y Transportation's settlement, she would not be required to satisfy her full responsibility to the Bossards. That result would not be consistent with § 1–1–109 or with our decision in *Haderlie.* By refusing to give Rudy credit for C & Y Transportation's settlement, the trial court furthered the public policies of promoting settlement and giving an injured plaintiff the benefit of his favorable pretrial settlement. The trial court properly harmonized Wyoming's law of comparative fault, the policy decisions articulated in *Haderlie,* and the fact that this case involves a voluntary settlement rather than a judgment. We conclude, therefore, that the trial court's decision was correct.

Affirmed.