Carlos JAMES, Appellant (Defendant),

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 97–186.

Supreme Court of Wyoming.

Feb. 29, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Assistant Appellate Counsel; Peter H. Froelicher, Assistant Public Defender; Stephen I. Singer,* Faculty Director, and David D. Larsen, Jr., Student Intern, of the Defender Aid Program. Argument by Mr. Froelicher.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker–Musick, Assistant Attorney General; Theodore E. Lauer, Director, Angela C. Dougherty, Student Intern, and Martina D. Miller, Student Intern, Prosecution Assistance Program. Argument by Ms. Dougherty.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,** JJ.

GOLDEN, Justice.

Appellant Carlos James appeals his conviction on two counts of indecent liberties with a minor and three counts of third degree sexual assault.

We affirm.

## ISSUES

James presents these issues for our review:

1. Whether plain error was committed when prior consistent hearsay statements from the states' key witness were admitted, not to rebut a claim of recent fabrication, but merely to bolster the witness' trial testimony?

2. Did the district court commit plain error when it permitted the prosecutor to repeatedly introduce evidence of appellant's alleged gang-related activities?

3. Was the appellant denied effective assistance of counsel?

4. Did the district court commit plain error when it ordered appellant to repay the fees of his public defender?

The State presents the issues as:

1. Was plain error committed when the victim's journal was admitted into evidence and the victim testified as to the content of her journal?

2. Was plain error committed when witnesses referred to appellant's use of "gang signs" and his earlier gang membership in New York?

3. Was appellant denied the effective assistance of counsel in his defense as guaranteed by the Constitution?

4. Did the district court commit plain error when it ordered appellant to reimburse the public defender's office for the services of counsel?

## FACTS

In 1996, fifteen-year old L.H. contacted police and complained that James had been harassing her. Further interviews with the minor established that she and James, a twenty-eight year old man, had a sexual relationship during May and June of 1996. L.H. gave the police a journal in which she had recorded the times, dates, and locations when she and James had sexual contact, and the police used the journal to formulate the charges against the defendant. During two interviews, James admitted to sexual contact and then signed a written statement admitting having oral sex and sexual intercourse with her during July and August of 1996. He was arrested, charged with two counts of indecent liberties in violation of Wyo. Stat. Ann. § 14–3–105, and eight counts of sexual assault in the third degree in violation of Wyo. Stat. Ann. § 6–2–304 and trial by jury was set. Before trial, James challenged the admission of his confessions. The district court found the confessions to be admissible and denied James' motion to suppress the statements.

* Order granting Singer's motion to withdraw as counsel on behalf of Appellant entered on May 18, 1998.

** Chief Justice at time of oral argument; retired November 2, 1998.

James waived his right to a preliminary hearing, and defense counsel did not make an opening statement at the beginning of the trial. During the trial, the prosecution presented four witnesses in its case-in-chief, including L.H. Sometimes reading verbatim, L.H. testified about the contents of her journal without objection and read entries listing the type of sexual encounter she and James engaged in, the dates, and the places. Entries read made racial epithets, speculated on James' gang activities, and described him as a thug. The prosecutor then had another witness, Audie Kistler, testify as to his personal knowledge of L.H.'s and James' relationship, James' admission to him that L.H. had performed fellatio on him, and the reaction of another person witnessing a sexual encounter between L.H. and James. Kistler testified that in exchange for his testimony against James the prosecutor was dismissing seven felony counts of indecent liberties or third degree sexual assault against him and making a sentencing recommendation. Two police officers testified about their investigation and James' statement admitting to three sexual acts with L.H. Direct examination of one investigating officer established that the journal was used to formulate the dates of sexual contact.

James was convicted of both counts of indecent liberties and three counts of sexual assault in the third degree and acquitted on the other five charges. At sentencing, he was sentenced to a term of five to seven years and a fine of $1,000.00 on Count I, the first indecent liberties charge; seven to nine years and a fine of $1,000.00 on the second charge of indecent liberties (Count X); and to a term of three to five years on each of the three counts of sexual assault in the third degree (Counts II, VIII, and IX). The court ordered that the sentences run concurrently on Counts I and II. The court also ordered Counts VIII, IX and X to run concurrently but ordered that Counts I and II run consecutively to Counts VIII, IX, and X. In summary, James was sentenced to twelve to sixteen years and ordered to pay a $2,000.00 fine. The district court also found that the defendant had or would have the ability to reimburse the county and the state for the reasonable value of the services provided by his court-appointed counsel and set that amount at $2,975.00, the amount given in the presentence report.

## DISCUSSION

*Admission of Journal Testimony*

In his first contention, James argues that permitting L.H. to read entries from her journal during direct examination was inadmissible hearsay evidence, improperly admitted as prior consistent statements under W.R.E. 801(d)(1)(B). The State contends that nowhere in the record does it appear that either the State or the district court justified admission of the journal on the ground of W.R.E. 801(d)(1)(B), and no stated reason for offering or admitting the journal appears in the record. The State also contends that the absence of an expressed reason for offering or admitting the journal was caused by defense counsel's objection on the ground that it was improper to read from the journal because it had not been offered into evidence. The journal was then offered into evidence, and the district court twice asked defense counsel if there were any objections to its admission. Defense counsel answered no both times, and the journal was then admitted into evidence without any further explanation by the State and without further foundation. The State contends that defense counsel's actions require this Court to apply the invited error doctrine to James' claim of error in this appeal.

W.R.E. 801(d)(1)(B) provides:

A statement is not hearsay if:

(1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

W.R.E. 801(d)(1)(B) has two express conditions. *Lacey v. State* 803 P.2d 1364, 1368 (Wyo.1990) (citing *Makinen v. State,* 737 P.2d 345, 349 (Wyo.1987)). First, the prior statement must be consistent with the declarant's testimony. Second, there must be

an express or implied charge of recent fabrication or of improper influence or motive. *Id.* In this particular case, because the journal entries were offered as original evidence on direct examination, neither of these conditions is satisfied, and the journal evidence was inadmissible hearsay. The court is not required to make a determination of admissibility when there is no objection to receipt of hearsay evidence. *Schmunk v. State,* 714 P.2d 724, 739 (Wyo.1986).

■ The doctrine of "invited error" has long been recognized in Wyoming and "embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit." *Schott v. State,* 864 P.2d 38, 39 (Wyo.1993) (quoting 5 Am.Jur.2d *Appeal and Error* § 713, at 159 (1962)). Generally, defense counsel must have solicited or otherwise acted affirmatively for the invited error doctrine to apply. *Id.* In this case, James' defense counsel failed to object to the error at trial, but did not solicit or consent to admitting the hearsay evidence, and we will not apply the invited error doctrine to these facts.

■ A party's failure to object at trial generally precludes appellate review unless the alleged error rises to the level of plain error. *Schmunk,* 714 P.2d at 739. James does not contend that any confrontation or due process concerns are implicated, presumably because the hearsay declarant was subject to cross-examination; however, he does contend that under a plain error review, the hearsay testimony prejudiced him. In past decisions, we have applied a plain error review to hearsay testimony. *Id.* For plain error to be found, the record must clearly establish the error; the error must violate a clear, unequivocal rule of law; and deny the substantial rights of the defendant, materially prejudicing him. *Id.* Our discussion has established that the first two elements are met, leaving for our review James' contention that he was materially prejudiced because the prosecutor used hearsay testimony to improperly bolster L.H.'s credibility.

■ James provided a written statement admitting to sexual encounters with L.H. Specifically, he admitted to taking indecent liberties in Bicentennial Park; having sexual intercourse in Bicentennial Park; and having sexual intercourse in her house. He stated all encounters were "sometime in July or August." At trial, L.H. read from a journal that covered the time period of April 28 through September 3, 1996. As each dated entry consists of just three or four lines, there are several dated entries on each page. The journal is a mere five pages long. The entry dated May 18 states:

> That Carloes [sic] guy is starting to hang around more. he's kinda cute. .Hes [sic] 17, Hes [sic] black and he's funny. But on the other hand the guy looks like trouble to me. I dont [sic] know though.

The prosecutor had L.H. read each entry from her diary, and asked:

Q. Okay. Take another look at your journal. When is the next entry that makes any reference to Carlos James?

A. May 18th.

Q. In that entry, do you put down how old he was?

A. Yes.

Q. How old does your entry reflect he was?

A. 17.

Q. In that entry, you make a reference that, "He is black, he is funny, but, on the other hand, the guy looks like trouble to me. I don't know though." Do you recall making that entry?

A. Yes.

There was nothing else to read from the journal concerning the events from May 18 and May 19. From her own recollection and through lengthy direct examination, L.H. testified about every event of that evening and the early hours of the next morning leading to her first two sexual encounters with James. She testified that she was with James the evening of May 18, and sometime in the early morning of May 19, she performed oral sex on James in the bathroom at Bicentennial Park and that she and James had sexual intercourse in the bushes at Bicentennial Park. In his written statement James admitted to one act of oral sex at Bicentennial Park and to one act of inter-

course at Bicentennial Park occurring in July or August. His confession differed from L.H.'s independent recollection only upon dates. The jury apparently believed L.H.'s testimony that the sexual encounters occurred in May. We find that James was convicted on Count I and Count II based on admissible evidence that established the elements of each crime, and we find no prejudice to James.

James' written statement also admitted to another act of sexual intercourse which he claimed took place at L.H.'s house "sometime in July or August." L.H. testified from her own independent recollection that she and James had sexual intercourse twice, once during the early evening of June 30 and again about 3:00 a.m. the next morning. Counts VIII and IX charged him with third degree sexual assault on or about June 30, 1996, and we again find that the jury's verdict was based on admissible evidence. Having admitted to Counts I, II, and VIII, and finding admissible testimony supporting Count IX, we find the inadmissible hearsay testimony was cumulative and do not find James to have been prejudiced. Count X charged him with an indecent liberties charge between May 24 and June 30, 1996. Inadmissible evidence from the diary entry dated June 30, stated "... me and Carloes [sic] got back togeth[er] and have had sex twice scence [sic] then." From her own, independent recollection, L.H. testified that she performed oral sex on James on June 30, 1996, and Kistler testified that both L.H. and James were seen together in a bedroom on that date, purportedly having a sexual encounter.

L.H. testified to five instances of sexual intercourse which she claimed occurred at friends' homes on May 24, June 1, June 8, June 17, and June 22. James was acquitted of those charges. For those charges upon which he was convicted, the hearsay testimony was cumulative to admissible testimony supporting conviction and did not prejudice James.

*Prejudicial Testimony*

James next contends plain error occurred when the prosecution had L.H. read journal entries to the jury containing numerous racial slurs, referring to James' own bragging that he was a gang member, telling of James' penchant for making gang signs, and describing him as thuggish and controlling. He contends that the record clearly establishes that this irrelevant testimony was admitted and used by the prosecutor for the sole purpose of inflaming the passions of the jury. He claims the prejudice element is met because the only admissible, credible evidence that he had sexual contact with L.H. is from his own admissions which do not establish the date of the crime for which he was charged. James believes that if the jury had considered proper evidence, he would not have been convicted on any of the ten charges.

The State contends that the prosecution did not introduce any evidence that defendant was a member of a gang, and any references to gang activities and gang signs were relevant to show how James' sought to impress younger teenagers; why a rebellious young girl would become attracted to and involve herself with James; and how James used "gang signs" as harassing tactics toward L.H. to intimidate her into reestablishing the relationship she was trying to end with him. The State also contends that the prosecutor asked one defense witness about gang signs to show his animus toward the victim, but, when it was unable to establish the proper foundation, ceased that line of questioning. The State contends the evidence, used when relevant or to show witness bias, was more probative than prejudicial and appellant was not materially prejudiced.

 Under our plain error review, we agree with James that this type of evidence was not relevant to prove or disprove any of the elements of the crimes of indecent liberties and third degree sexual assault. It is, however, relevant to show witness bias in a limited fashion where sufficient foundation establishes common gang membership of the defendant and the witness. *United States v. Elkins,* 70 F.3d 81, 84 (10th Cir.1995). The State asked one question attempting to establish a foundation, failed and moved on, and we agree with the State that James cannot demonstrate the requisite prejudice

and show plain error from probing witness bias. As our analysis from the previous issue indicates, James was convicted upon those charges where admissible evidence established all elements of the crimes charged, including the dates of those crimes, and he either confessed to the crimes or they were independently corroborated by another witness. James cannot demonstrate the requisite prejudice from L.H.'s testimony about James' gang-like behavior to find plain error.

### Effective Assistance of Counsel

James contends that his trial counsel was ineffective for failing to object to L.H.'s journal, failing to object to the repeated introduction of evidence about James' gang-related activities, and failing to present any cogent or consistent theory or strategy regarding the existence of James' pre-trial confessions. The State contends that L.H.'s journal would have been admitted to refresh her recollection and the failure to object was a partially successful trial tactic which permitted defense counsel to present it as a fabrication to the jury, and arguably accounts for James' acquittal on five charges and his favorable, concurrent sentencing. The State further contends that L.H.'s impressions of James were relevant and counsel made a tactical decision not to object without creating an unfair trial. Finally, the State contends that defense counsel's strategy to downplay the confessions and suggest they were false was constitutionally sufficient.

 A criminal defendant's right to the assistance of counsel is guaranteed by the Sixth Amendment to the Constitution of the United States, made applicable to the states through the Fourteenth Amendment, and is guaranteed by the Wyoming Constitution in Article 1, Section 10. *Miller v. State*, 942 P.2d 1108, 1109 (Wyo.1997). We have adopted the standard for determining whether a defendant received effective assistance of counsel from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Miller*, 942 P.2d at 1109.

 We agree with the State on all of James' contentions about this issue. We can only discern trial strategy from the record, and, in this case, it indicates that defense counsel did use the journal in an attempt to show L.H. was fabricating, and defense counsel did address the issue of the confessions before the jury. The testimony describing James' behavior as gang-like cannot be said to have resulted in an unfair trial or produced an unreliable result. Our careful review of the record shows that the jury did not believe L.H.'s testimony which was not either admitted to by James or corroborated by other witnesses and acquitted him on five charges. Counsel's performance was not constitutionally deficient.

### Reimbursement of Fees

Finally, James contends that plain error occurred when the district court ordered him to reimburse the state for the cost of his public defender in the amount of $2,975.00. James argues that the district court did not support its finding of an ability to pay with substantial evidence and the reimbursement order was improper. The State contends that, although the order is adequately supported by evidence in the record, the statute does not require any more than the district court finding that a defendant has or will have an ability to pay. The State further contends that the ability to pay is not limited to present ability, but includes a foreseeable ability to pay.

 The applicable statute is Wyo. Stat. Ann. § 7–6–106 (Michie 1997). It was amended in 1996 to direct that, for the period

beginning July 1, 1996, and ending June 30, 1998, the presiding court is to determine whether a defendant is able or unable to reimburse the state. If he is unable, the court is directed to enter that specific finding into the record along with the reasons for that determination. If he is found to be able to reimburse, the court is directed to enter an order of reimbursement to the state.

Wyo. Stat. Ann. § 7–6–106(c) states in pertinent part:

\* \* \*

For the period beginning July 1, 1996, and ending June 30, 1998:

(i) In every case in which a person has received services under W.S. 7–6–104, the presiding judge shall determine whether the person is able to provide any funds towards payment of part or all of the cost associated with such services. If the person is not able to provide any funds towards payment of such costs, the court shall enter a specific finding on the record. If the court determines the person is able to provide any amount as reimbursement, the court shall order the person to reimburse the state for the costs of the services provided or shall state on the record the reasons why an order for reimbursement was not entered[.]

Because James was ordered to pay reimbursement for public defender services on April 9, 1997, the statute applies to the order. Our previous decision requiring the court to make specific findings on an ability to pay was based on a version of the statute that did not contain paragraph (i). *Collier v. State*, 920 P.2d 265, 267 (Wyo.1996). Then, the statutory language included only paragraph (c), which stated:

(c) To the extent that a person receives the services set out in W.S. 7–6–104, and is able to provide some funds toward the costs associated with such services, the presiding court may order the person to reimburse the state for the cost of the services provided. **In making such an order, the court shall consider the financial resources of the person and the expenses and services provided in light of** **the state public defender's standard fee schedule.** Where a person is initially provided with counsel pursuant to W.S. 7–6–105(a), but subsequently retains private counsel, the court may order the person to reimburse the state for the services already provided.

Wyo. Stat. Ann. § 7–6–106(c) (Michie Supp. 1994) (emphasis added). *Collier* found that the emphasized language allowed the presiding court to set a reimbursement amount after evaluating these factors without necessarily concluding the defendant had an ability to pay. *Collier*, 920 P.2d at 267. In this case, the record does not show that the district court evaluated or discussed James' financial resources or other factors relating to his ability to pay. The district court ruled James had an ability to pay and set a reimbursement amount. We must examine whether the amended statute intended for the district court to have resolved the issue in this manner.

Our statutory construction rules for amended statutes were summarized in *Brown v. State*, 590 P.2d 1312 (Wyo.1979):

[When the legislature amends a statute,] we are then concerned with the intent of the legislature in making this amendment.... It is presumed that when such an amendment is enacted to an existing statute that some change in the existing state of the law was intended and that the court should endeavor to make such amendment effective. We must also presume that such amendment was enacted with full knowledge of existing decisions and of the statutes with respect to the matter. Under these rules we must then consider the law as it had existed and had been interpreted before the amendment and the effect and purpose of the amendment changing it, with the idea of reconciling both provisions if possible. If the conflict cannot be reconciled, the amendatory language must prevail since it is the latest decision of legislative will.

*Id.* at 1314–15 (citations omitted). The plain language of paragraph (i) removes the presiding court's discretion in determining and ordering reimbursement, and it no longer uses the language which this Court had pre-

viously interpreted as requiring an evaluation of financial resources and other factors. Instead, it directs the presiding court to either order reimbursement in some amount or explain why the defendant cannot pay something. The resulting change in the court's emphasis requires that we infer that the legislature intended for a presiding court to presume that all defendants had either a present or future ability to pay unless proved otherwise. Given this change in the legislation, we agree with the State that it is reasonable for the district court to have ordered reimbursement based on James' future ability to pay, and we find no abuse of discretion.

The order of judgment and sentence is affirmed.

THOMAS, Justice, concurring specially.

I am in full accord with the affirmance of James' conviction, and I agree with practically all that is said in the majority opinion. It is my view, however, that the majority opinion speaks too broadly in rejecting the admissibility of the journal of L.H. under W.R.E. 801(d)(1)(B). The majority opinion in so doing makes the blanket statement that "the journal evidence was inadmissible hearsay." *Op.* at 392. Although the State, in its appellate brief, clearly offers alternative theories of admissibility for the journal, the majority opinion forgoes any discussion of those theories.

The State relies upon *Johnson v. State,* 930 P.2d 358, 361–62 (Wyo.1996), in which this Court said:

"[D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal." *Tennant v. State,* 786 P.2d 339, 343 (Wyo.1990) (citing *Hopkinson v. State,* 632 P.2d 79, 101 (Wyo. 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982)). "Rulings on the admissibility of evidence are committed to the sound discretion of the district court and are not subject to appellate second guessing absent an abuse of discretion. Abuse of discretion occurs when a court's decision, or decision-making process, ex-

ceeds the bounds of measured reason in light of those matters properly before that court." *Curl v. State,* 898 P.2d 369, 373 (Wyo.1995) (citations omitted). Hearsay evidence is ordinarily inadmissible; however, it can be received in evidence if it falls within one of the exceptions to the hearsay rule found in the Wyoming Rules of Evidence and it bears sufficient indicia of reliability to avoid violation of the Confrontation Clause. *Hopkinson,* 632 P.2d at 132. "We will not reverse [a decision admitting hearsay] unless there is clearly no adequate basis in law supporting the trial court's rulings. Thus, if we can conclude that the challenged evidence was properly admissible under any exception to the hearsay rule then we must affirm its admission into evidence." *Hopkinson,* 632 P.2d at 129.

The State suggests that the journal could be admitted pursuant to W.R.E. 803(5), which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(5) *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party[.]

The State concedes that the record does not contain the normal foundation testimony, which would be expected to invoke this exception to the hearsay rule.

We have ruled that a diary can be read from in a personal injury action to report the daily symptoms of the injured party. *Rudy v. Bossard,* 997 P.2d 480, 484 (Wyo.2000). There we said:

Under W.R.E. 803(5), a memorandum or record may be read into evidence by a

witness as long as: the witness once had personal knowledge of the matter, the record or memorandum was prepared by the witness when it was fresh in her memory, the record or memorandum accurately reflected the witness' knowledge, and the witness did not have sufficient recollection at the time of the trial to enable her to testify fully and accurately. 31 Michael H. Graham, Federal Practice and Procedure: Evidence § 6756 (Interim ed.1997).

*Rudy*, 997 P.2d at 484. The substance of these foundation requirements is incorporated in the rule, and they are set forth in a slightly different way in Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 443 (2d ed.1994).

The State correctly points out that the journal was neither offered under this exception to the hearsay rule nor was a foundation made because of James' insistence that it be received into evidence before it was referred to by the witness. The situation created by James' demand excuses the State, and the trial court, both from identifying the particular grounds for admissibility and providing a proper foundation. Neither of these features was addressed in the record because of what must be accepted as the agreement of James that the journal should be received into evidence.

My separation from the majority position is that I would not conclude that the trial court erred in admitting L.H.'s journal into evidence. I would invoke and apply the rule set forth in *Johnson* to justify the reading of the journal at trial pursuant to W.R.E. 803(5). This analysis then leads me to the conclusion that the plain error rule was not applicable because there was no error. Having articulated this difference with the rationale of the majority of this Court, I agree that James' Judgment Upon Jury Verdict and Judgment of Acquittal, entered on February 18, 1997, and James' Sentence, entered on April 17, 1997, should be affirmed.